UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON ROBERT WYLIE, et al.

       Appellants,

                                        Civil Action No. 21-cv-11354

vs.                                       HON. MARK A. GOLDSMITH

TIMOTHY J. MILLER,

       Appellee.

_____/

## OPINION & ORDER
## AFFIRMING THE BANKRUPTCY COURT'S DECISION

Appellants/Debtors Jason and Leah Wylie, a married couple, filed a joint voluntary bankruptcy petition pursuant to 11 U.S.C. Ch. 7. The Wylies sought to exempt from their bankruptcy estate certain state and federal income tax refunds. Appellee Timothy Miller, the trustee of the Wylies' bankruptcy estate, filed an objection to the Wylies' claimed exemption regarding these tax refunds. See Bankr. Rec. at PageID.22–28 (Dkt. 4). The bankruptcy court sustained the Trustee's objection. Id. at PageID.269–288; In re Wylie, 630 B.R. 68 (Bankr. E.D Mich. May 28, 2021). The Wylies appeal from this decision. For the following reasons, the Court affirms the bankruptcy court's decision.[1]

### I. BACKGROUND

In their 2018 state and federal tax return, filed on March 31, 2020, the Wylies elected to apply their tax refunds to the subsequent tax year's return. See Bankr. Rec. at PageID.122, 145.

---

[1] The Wylies' request for oral argument is denied because oral argument will not aid the Court's decisional process. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). The matter will be decided based on the parties' briefing, which includes the Wylies' brief (Dkt. 5), the Trustee's brief (Dkt. 6), and the Wylies' reply (Dkt. 10).

They made the same election in their 2019 tax returns, filed on September 15, 2020. See id. at PageID158. In 2021, the Wylies requested refunds for their 2020 tax returns in the form of a check. Wylie Br. at 3; Trustee Br. at 5.

The Wylies filed their joint voluntary bankruptcy petition on August 27, 2020. Before requesting their 2020 tax returns in the form of a check, the Wylies sought to exempt from the bankruptcy estate their right to claim and receive their 2020 income tax refunds, pursuant to Mich. Comp. L. § 600.5451(1)(n), which exempts certain types of property listed in Mich. Comp. L. § 557.151 that are held jointly by a husband and wife as a tenancy by the entirety.[2] This property includes "[a]ll bonds, certificates of stock, mortgages, promissory notes, debentures, or other evidences of indebtedness hereafter made payable to persons who are husband and wife . . . ." Mich. Comp. L. § 557.151. The Wylies argued that their right to claim and receive an income tax refund is covered by § 557.151 and that their jointly filed tax return constitutes "evidence[] of indebtedness"—i.e., evidence of payment owed to the Wylies from the government. The Trustee filed an objection to the Wylies' claimed exemption.

The bankruptcy court agreed with the Trustee, explaining that a debtor's claimed exemptions are determined "'as of the date he filed his bankruptcy petition,'" and that, "as of the bankruptcy petition date in this case," all that the Wylies had regarding a tax refund was a document asserting their claim to a tax refund; "there was no tax refund check payable to the [Wylies] in existence." In re Wylie, 630 B.R. at 71 (quoting In re Sharkey, 563 B.R. 655, 659 (Bankr. E.D. Mich. 2017)).[3] "[A] right to a tax refund (or to a credit for a tax overpayment)

---

[2] A debtor may elect state-law exemptions under 11 U.S.C. § 522(b)(3).

[3] Thus, the bankruptcy court correctly reasoned, the 2019 tax returns, filed post-petition, have "no bearing on the [Wylies'] claimed exemptions." In re Wylie, 630 B.R. at 80. Further, the bankruptcy court properly declined to consider the Wylies' check for their 2020 tax return

2

might fall under § 557.151 . . . when it is in the present form of a tax refund check, payable jointly to a husband and wife." Id. at 79. But a mere joint tax return, the bankruptcy court concluded, is not protected by § 557.151. Id. at 79–80. Accordingly, the bankruptcy court sustained the Trustee's objection.

## II. ANALYSIS[4]

On appeal, the Wylies contend that the bankruptcy court erred in concluding that their joint tax return was not "evidence[] of indebtedness" as used in § 557.151. The Court disagrees.

In reaching its holding, the bankruptcy court correctly recognized that its task was to discern how the Michigan Supreme Court would decide the issue if confronted with it. Id. at 73–74 (citing In re Spradlin, 231 B.R. 254, 256 (Bankr. E.D. Mich. 1999)).[5] The bankruptcy court relied on, among other authorities, the one case that has squarely addressed the issue, Jahn v. Regan, 584 F. Supp. 399 (E.D. Mich. 1984). Jahn in turn relied on Hiller v. Olmstead, 54 F.2d 5 (6th Cir. 1931). Hiller held that "it is manifest that the words 'evidence of indebtedness,' as used in the statute, refer only to instruments of the same general nature as bonds, mortgages, notes, and debentures with which they are associated. The maxim noscitur a sociis applies." 54 F.2d at

---

refund, which was requested and obtained months after the filing of their bankruptcy petition. Id. at 70 n.2. The Wylies' attempt to argue on appeal that the tax refund checks should be considered is unavailing. See Wylies Br. at 12.

[4] The Court reviews the bankruptcy court's factual findings for clear error and its legal conclusions de novo. In re Batie, 995 F.2d 85, 88 (6th Cir. 1993).

[5] When the issue before a federal court in a bankruptcy proceeding is strictly one of interpretation of state statutory law, "a federal court sits as a lower state court would." In re Spradlin, 231 B.R. at 256. This means that the federal court must look to how the Michigan Supreme Court has interpreted § 557.151 in the context of rights to tax refunds. As the bankruptcy court noted, "[t]he parties have not cited any Michigan Supreme Court decision that decided the specific issue before the Court, and the Court is not aware of any such decision." In re Wylie, 630 B.R. at 73. "[W]hen the state supreme court has not spoken, the task of the federal court is 'to discern, from all available sources, how that court would respond if confronted with the issue.'" In re Spradlin, 231 B.R. at 256 (quoting In re Akron-Cleveland Auto Rental, Inc., 921 F.2d 659, 662 (6th Cir. 1990)) (other citations omitted).

3

7. Under the principle of "noscitur a sociis," a word is "known by the company it keeps" to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." Yates v. United States, 574 U.S. 528, 543 (2015).  Applying the maxim of noscitur a sociis, the Jahn court determined that "[a] tax refund or overpayment for a jointly filed tax return cannot be reasonably characterized as an 'evidence of indebtedness'" in the "same manner" as the items expressly listed in § 557.151.  584 F. Supp. at 410.

The bankruptcy court noted that "[n]o Michigan case decided after Hiller can be viewed as contradicting" Hiller's holding that noscitur a sociis applies in interpreting the phrase "other evidences of indebtedness." In re Wylie, 630 B.R. at 79 n.10.  "Instead, the post-Hiller Michigan cases are properly viewed as merely adding certain categories of property to the list of what is included in the statutory phrase 'evidences of indebtedness.'" Id.  For instance, in Theisen v. Theisen, 183 N.W.2d 373, 374 (Mich. App. 1970), the court held that "checks payable to husband and wife" are "other evidence[] of indebtedness."  In Zavradinos v. JTRB, Inc., No. 268570, 2007 WL 2404612, at *1 (Mich. Ct. App. August 23, 2007), the court determined that "stock brokerage accounts and shares of stock" are "other evidence[] of indebtedness.  And under Huntington National Bank v. Steuer, No. 346998, 2020 WL 4030451, at *5 (Mich. Ct. App. July 16, 2020), "shares of stock and the sale proceeds of same, plus tax refund checks" are "other evidence[] of indebtedness."

Synthesizing Jahn and the post-Hiller Michigan cases, the bankruptcy court determined that the only reasonable interpretation of § 557.151—and, therefore, the one that the Michigan Supreme Court would adopt—is that the statute covers evidence of another party's acknowledgment of (i) a debt that it owes to the spouses (such as bonds, mortgages, promissory notes, or debentures) and (ii) the spouses' ownership interest in a corporation.  In re Wylie, 630

4

B.R. at 79–80.  A jointly filed tax return does not amount to an acknowledgement by another party of either type of asset.  Id. at 80.  Rather, "a joint tax return ultimately is just a written statement by a husband and wife, making unilateral assertions about their income, deductions, credits, and tax liability."  Id.  The bankruptcy court appropriately concluded that, if faced with the issue, the Michigan Supreme Court would find that joint tax returns are not "evidence[] of indebtedness" within the meaning of § 557.151.  Id.

The Wylies' challenges to the bankruptcy court's decision are entirely unpersuasive.

First, the Wylies contend that the tax returns themselves are "evidence of indebtedness," Wylie Br. at 6–7.  The theory seems to be that the returns, although not a property right in themselves, are the starting point in a chain of events that may ultimately establish an overpayment of tax.  In other words, "evidence of indebtedness" is a term that "includes all things that tend to establish an obligation payable to husband and wife."  Id. at 9.

But nothing in the language of § 557.151 suggests that a document can be deemed evidence of indebtedness when the "evidence" consists only of a claim—a self-serving one at that—by the party to whom a debt is allegedly owed, rather than the acknowledgment of the party who owes the debt.[6]  Far from embracing mere claims, the language of the statute sets out specific documents that embody property rights, either by specific category (e.g. promissory notes) or by particular function ("evidence of indebtedness").  Inchoate claims, such as claims to a tax refund, do not come within the statute's language.  If the Wylies' theory were correct, then the mere assertion of a debt owed would be considered "evidence of indebtedness"—including a simple demand letter making a claim.  This would be a breathtaking expansion of the statute's

---

[6] Although the term "evidence of indebtedness" can "have various meanings depending on the context of its use," in "common commercial parlance," it "embrac[es] any and all writings . . . [that] represent an obligation on the part of the writer to do something for the holder."  United States v. Jones, 450 F.2d 523, 524 (5th Cir. 1971) (emphasis added).

reach, well beyond the confines of the language the statute used. And it is the statute's language that must be heeded. See Consumer Prod. Safety Comm. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980); Ally Fin. Inc. v. State Treasurer, 918 N.W.2d 662, 667 (Mich. 2018).

Second, the Wylies argue that the bankruptcy court's reading of the statute violates the principle that similarly worded provisions within the law should be interpreted in identical ways. Wylies Br. at 9–10. They point to another provision in the same statutory chapter, § 557.111, which protects a spouse who married an individual not knowing that the individual was still married to another person. The protection consists in deeming certain jointly acquired property during the bigamous marriage—including "evidence of indebtedness"—to be owned with a full right of survivorship should the bigamist spouse pre-decease the innocent one.[7] The Wylies assert that this statutory provision was designed to afford "broad protection to the joint property rights of a husband and wife," Wylie Br. at 11, as evidenced by certain legislative history of the bill that was later enacted.[8] The Wylies argue that this same "broad protection" should be applied to § 557. 151. Id. at 9.

The Wylies are correct that "'[i]t is a normal rule of statutory construction that identical words used in different parts of the same parts of the act are intended to have the same

---

[7] Section 557.111 states, in full:

> If a marriage is contracted by 1 of the parties in good faith and without knowledge of a prior undissolved marriage of the other party, and if that other party predeceases the party who entered into the marriage in good faith, the real property and any land contract, bond, certificate of stock, mortgage, promissory note, debenture, or other evidence of indebtedness acquired jointly after the marriage by the parties, unless otherwise expressly provided by the parties, shall be considered at the time of the other party's death to have been owned by the parties with full right of survivorship.

[8] The terse legislative history consists of a "Legislative Analysis," which recites that "all property and indebtedness acquired jointly by them after the marriage would be considered, with respect to the innocent party, to be theirs with full right of survivorship upon the death of either party." House Legislative Analysis Section (Dkt. 5-1).

meaning.'" Id. at 9–10 (quoting Taniguchi v. Kan Pacific Saipan, Ltd., 566 U.S. 560, 571 (2012)). But their argument is flawed in two ways.

For one thing, delving into legislative history is often a fraught undertaking, given the vagaries inherent in attempting to discern the ultimate "intent" of a legislative body from a report or analysis prepared by staff or a small number of legislators. For that reason, courts are often critical of any effort going beyond the language actually used. See GTE Sylvania, 447 U.S. at 108; Ally Fin., 918 N.W.2d at 667. In our case, trying to ascertain legislative intent from a brief reference in a staff analysis leads to no definitive result.[9]

The Wylies' argument is vulnerable beyond its dependency on legislative history. Nothing in the language of the innocent spouse statute suggests that a mere claim would be protectible under that statute. That statute and § 557.151 refer to types of documents embodying property rights—not claims that may ultimately, with the passage of time and events, be reflected in such documents. If anything, the principle of consistency in interpreting two similarly worded statutes argues against the Wylies' position.

Third, the Wylies invoke another principle of statutory interpretation: the "'cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute.'" Wylie Br. at 11 (quoting Williams v. Taylor, 529 U.S. 362, 364 (2000)). Inexplicably, they fail to identify what provision of the statute is ignored or not given effect. It is not the Court's responsibility to fashion an argument that a party fails to articulate. See McPherson v. Kelsey, 125 F.3d 989, 995–996 (6th Cir. 1997).

Fourth, the Wylies argue that Jahn's holding regarding the non-applicability of § 557.151

---

[9] Notably, the legislative analysis does not accurately capture the language of the bill as ultimately enacted. Contrary to the legislative analysis, the statute does not refer to "all property," but only certain defined items, as is the case with § 557.151.

7

to joint tax returns is "distinguishable and/or inapplicable," Wylie Br. at 15, because Jahn also held that even if § 557.151 did apply to the joint tax return, "federal supremacy would overcome the State's characterization and avoid this co-ownership doctrine," Jahn, 584 F. Supp. at 410. The Wylies conclude that Jahn's holding about the non-applicability of § 557.151 was "secondary reasoning" that should not be followed. Wylie Br. at 16.

As the bankruptcy court noted, Jahn's determination regarding § 557.151 "is as much a holding as is the court's holding about the Supremacy Clause." In re Wylie, 630 B.R. at 73. In any case, the question is not whether Jahn's holding regarding § 557.151 is binding but, rather, whether this holding, when considered with other available sources, supports the conclusion that the Michigan Supreme Court would determine that a right to a tax refund is "evidence[] of indebtedness." Even if Jahn's determination regarding § 557.151 is "secondary reasoning," this does not mean that the Michigan Supreme Court would find it unpersuasive.

Finally, the Wylies contend that the bankruptcy court erred by determining their claim to an exemption based on the petition date while determining the Trustee's interest in the tax refunds as of the date of the refund checks. Wylie Br. at 17–18. The simple answer is that bankruptcy law provides for different rules for the determination of exemptions and property recoverable by a trustee. Claimed exemptions are determined as of the date of the filing of the bankruptcy petition, In re Sharkey, 563 B.R. at 659; as explained above, all the Wylies had as of the date they filed their bankruptcy petition was their claim—but not a check—for a tax refund. However, because a trustee acting on behalf of a bankruptcy estate "step[s] into the [d]ebtor's shoes," In re Hunter, 380 B.R. 753, 780–781 (Bankr. S.D. Ohio 2008) (punctuation modified, citation omitted), even if the debtor did not obtain a tax refund check by the filing of the bankruptcy petition, the trustee may later request a tax refund check to which the debtor was

entitled as of the date of the bankruptcy petition, see 11 U.S.C. § 505(a); IRS Rev. Proc. 2010-27.  There was no error on this ground.

### III.  CONCLUSION

For the foregoing reasons, the Court affirms the bankruptcy court's decision sustaining the Trustee's objection to the Wylies' claimed exemption for their claimed rights to tax refunds.

SO ORDERED.

Dated: July 21, 2022  
      Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 21, 2022.

s/Kelly Winslow  
Case Manager